IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Arthur Alan Wolk, Philip Browndies, and Catherine Marchand | : : : | |
| v. | : : | No. 1465 C.D. 2016 Argued: November 12, 2019 |
| The School District of Lower Merion, Appellant | : : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 2, 2020

On remand from the Pennsylvania Supreme Court, we consider the merits of a preliminary injunction issued by the Court of Common Pleas of Montgomery County (trial court) upon the petition of Arthur Alan Wolk, Philip Browndies, and Catherine Marchand (collectively, Taxpayers). The injunction barred the School District of Lower Merion (School District) from implementing a 4.44% tax increase for fiscal year 2016-2017 and, instead, limited the tax increase to 2.4%. This Court affirmed the trial court's grant of the injunction on the ground that the School District had waived all issues on appeal. *Wolk v. School District of Lower Merion* (Pa. Cmwlth., No. 1465 C.D. 2016, filed April 20, 2017) (unreported). The Supreme Court reversed and directed this Court on remand to address the merits of the School District's appeal. *Wolk v. School District of Lower Merion*, 197 A.3d 730 (Pa. 2018). After review, we affirm the trial court's grant of the preliminary injunction.

**Background**

In 2016, Taxpayers initiated a class action on behalf of present and past residents of Lower Merion, seeking $55,000,000 in damages plus interest and costs against the School District. Taxpayers alleged that the School District misrepresented its finances to the Pennsylvania Department of Education (Department) and set up an illegal education program for teachers (Counts I-III). Taxpayers sought to suspend the authority of the Lower Merion School Board (School Board) to operate the School District and to replace it with a trustee (Counts IV-V, XI); to impose a constructive trust over the School District's surplus funds (Count VI); to terminate certain employees for misconduct (Counts VII-VIII); to appoint a Board of Viewers (Count IX); to revise the School District's bond refinance disclosures and transfer funds from the capital reserve fund to the general, unreserved fund (Count X); and to declare the School District's taxation system unconstitutional because it taxes property owners without consideration of the number of children a taxpayer has in the schools (Count XII).

The School District filed preliminary objections to the amended complaint asserting that: (1) the claims raised nonjusticiable political questions; (2) Taxpayers lack standing; (3) the claims were barred by the act commonly referred to as the Political Subdivision Tort Claims Act;[1] (4) Taxpayers failed to join indispensable parties; (5) the amended complaint did not state a cause of action upon which relief can be granted; (6) the amended complaint sought unconstitutional relief; and (7) Taxpayers had an administrative remedy with the Department.

While the preliminary objections were pending, Taxpayers petitioned for a preliminary injunction to enjoin the School District from implementing any tax

---

[1] 42 Pa. C.S. §§8541-8542.

2

increase for the 2016-2017 fiscal year in light of the prior years' unlawful tax increases. Taxpayers asserted that the injunction would not prejudice the School District because it had accumulated a large surplus. The School District's answer denied the material allegations. The trial court conducted a hearing on June 14, 2016.

At the hearing, the School District informed the trial court that the School Board had approved a 4.44% tax increase the previous evening, which rendered the preliminary injunction moot. Taxpayers requested the trial court "to address the merits of the case because [the] tax increase is absolutely illegal." Notes of Testimony, 6/14/2016, at 6 (N.T.__). The trial court permitted Taxpayers to amend their petition to challenge the newly announced tax increase and present evidence thereon.

Under the Taxpayer Relief Act,[2] a school district can increase taxes up to a point set by the statutory index, without having to put the increase to a vote by the taxpayers. For the School District, the maximum increase was 2.4% for the 2016-2017 fiscal year.[3] However, the School District had requested the Department to allow it to raise taxes by 4.44% without taxpayer approval. In its application for the exception, the School District projected a $9.3 million deficit for the 2016-2017 school year. On that basis, the Department approved the School District's request for an exception from the voter referendum, which authorized the School District to increase real estate taxes to generate revenue "of no more than $4,051,213 over the index." Reproduced Record at 1541a (R.R. __).

---

[2] Act of June 27, 2006, P.L. 1873, *as amended*, 53 P.S. §6926.333.

[3] The amount of the tax increase in excess of 2.4% has been placed in escrow during this litigation.

Taxpayers' evidence showed that the School District had projected a deficit for every fiscal year from 2009-2010 through 2015-2016; however, during that period it accumulated a budget surplus of approximately $42.5 million. The evidence showed that each year the School District underestimated its annual revenue by approximately 1.1% and overestimated expected expenditures by approximately 5.5%. Each fiscal year, the School District projected a budget deficit that entitled it to an exception from the voter referendum otherwise required by the Taxpayer Relief Act. Since 2006, the School District had increased taxes by 53.3%.

Taxpayers' evidence also established that the School District regularly transferred funds from its general, unreserved fund to its capital reserve fund.[4] Absent that transfer, the School District would have had a general, unreserved fund balance greater than the 8% limit imposed by Section 688 of the Public School Code of 1949 (School Code).[5] Since 2009-2010, the School District has annually certified to the Department that its general fund balance would be less than 8% of its estimated

_____

[4] School District did not identify specific capital projects at the preliminary injunction hearing.

[5] Act of March 10, 1949, P.L. 30, *as amended,* added by the Act of December 23, 2003, P.L. 304, 24 P.S. §6-688. Section 688(a) of the School Code states, in pertinent part, that

> (a)   For the 2005-2006 school year and each school year thereafter, no school district shall approve an increase in real property taxes unless it has adopted a budget that includes an estimated ending unreserved, undesignated fund balance less than the percentages set forth [in Section 688(a)].

24 P.S. §6-688(a). Section 688(a) provides that for a school district with total budgeted expenditures greater than or equal to $19 million, its estimated ending unreserved, undesignated fund balance must be less than 8% of its total budgeted expenditures in order for the school district to raise real property taxes. 24 P.S. §6-688(a). The School District's total budgeted expenditures ranged from $193 million to $258.9 million from fiscal year 2009-2010 through 2016-2017. R.R. 1232a. On the other hand, the capital reserve fund is not subject to statutory caps under the School Code.

4

expenditures.[6] The School District's general fund transfers kept its general fund balance below the 8% limit in the School Code. Taxpayers described the fund transfers as a sham designed to avoid putting school tax increases to a vote by residents.

Taxpayers presented two witnesses and documentary evidence, including the School District's proposed budgets for fiscal years 2008-2009 through 2016-2017 and budgetary comparison schedules prepared by certified public accountants. This evidence demonstrated the discrepancies between the projected deficits and the actual realized surpluses. The School District presented no witnesses. Its documentary evidence consisted solely of its preliminary and final budgets for fiscal year 2016-2017 and the Department's letter approving the District's voter referendum exception. The School District argued that Taxpayers did not establish the elements necessary for a preliminary injunction.

**Trial Court Decision**

On August 29, 2016, the trial court issued an injunction ordering the School District to "adopt a resolution revoking the tax increase of 4.44% for fiscal year 2016-2017, and enacting a tax that represents an increase of no more than 2.4% greater than the tax in effect for fiscal year 2015-16." Trial Court op. at 15-16. Crediting Taxpayers' evidence, the trial court reasoned as follows:

> *The School District's accounting practices may not incur a specific sanction of the statutes regulating them*, but they are skirting the purposes of the law to prevent school districts from both accumulating a surplus over a certain percentage of the annual budget and raising taxes over a certain level without going to a referendum of the voters. *The District's legerdemain in*

---

[6] Section 688(b) of the School Code provides that a school district that approves an increase in real property taxes shall provide the Department with information certifying compliance with Section 688 of the School Code. 24 P.S. §6-688(b).

*yearly projecting multimillion-dollar deficits* in documents required by law to be published to the voters and/or filed with the Commonwealth and not disclosing that contrary to projections the District every year experienced multimillion-dollar surpluses, which it then transferred into other accounts, while every year seeking and obtaining the Commonwealth's permission to raise taxes beyond what would ordinarily be permitted without a referendum of the voters based on questionable cost estimates, was less than the transparent budgeting and taxing process the [] School Code and the Taxpayer Relief Act sought painstakingly to institute. The District's tax increases in these circumstances violated the spirit, and in some cases the letter, of these laws.

*The remedy provided by the law for a school district's repeatedly and intentionally violating the intendment of the [] School Code in budgeting and taxing practices is an injunction against the practices….*

\*\*\*

Taxpayers and the public should be entitled to expect that governmental units taxing them will not year after year pursuant to a systematic pattern present them with projected deficits to justify raising taxes, raise taxes as a consequence, then record actual massive surpluses in the general fund at the end of each fiscal year, only to transfer the surpluses into other, designated accounts so that the source of the funds cannot be readily determined by those not directly involved in the governmental unit's financial affairs. An injunction against this repeated practice of the [] School District is the only appropriate remedy to bring the illegal practice to a halt.

Trial Court op. at 14-15 (emphasis added).

The trial court did not identify its injunction as preliminary or permanent. Notably, it directed Taxpayers to post a bond of $4,200 "[i]n the event

6

this injunction is construed as subject to Pa. R.C.P. [No.] 1531(b),[7]" and this rule pertains to preliminary injunctions. Trial Court op. at 16. The trial court acknowledged that its decision did not resolve all issues in the case, noting that "preliminary objections were argued before another Judge" two weeks prior. *Id*. at 1. *See also id*. at 16 (declining "Plaintiffs' requested relief of establishing a constructive trust in favor of taxpayers who have already paid the unlawful increase in taxes, pending determinations relating to the class-action status of this litigation"). Implicitly, the trial court rejected the School District's jurisdictional challenges.

## Appeal

The School District appealed the trial court's injunction to this Court. Taxpayers moved to quash the School District's appeal for failure to file a post-trial motion in accordance with Pennsylvania Rule of Civil Procedure No. 227.1(c)(2), (requiring filing of post-trial motions within 10 days after "the filing of the decision in the case of a trial without a jury"). PA. R.C.P. No. 227.1(c)(2). This Court quashed the School District's appeal, holding that the trial court had in actuality issued a

---

[7] Pennsylvania Rule of Civil Procedure No. 1531(b) states:

> (b) Except when the plaintiff is the Commonwealth of Pennsylvania, a political subdivision or a department, board, commission, instrumentality or officer of the Commonwealth or of a political subdivision, *a preliminary or special injunction shall be granted only if*
>
> > (1) *the plaintiff files a bond in an amount fixed and with security approved by the court*, naming the Commonwealth as obligee, conditioned that if the injunction is dissolved because improperly granted or for failure to hold a hearing, the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees, or
> >
> > (2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court to be held by the prothonotary upon the same condition as provided for the injunction bond.

PA. R.C.P. No. 1531(b) (emphasis added).

permanent injunction. By not filing a post-trial motion, the School District had waived all issues raised in its appeal.

The School District filed a petition for allowance of appeal, which the Supreme Court allowed on the question of whether a post-trial motion was required or whether the School District could proceed with an interlocutory appeal as of right under Pennsylvania Rule of Appellate Procedure 311(a)(4).[8]

Reversing this Court, the Supreme Court held that the School District's appeal was governed by Rule 311(a)(4), which authorizes an interlocutory appeal of an order granting an injunction. PA. R.A.P. 311(a)(4). It held that the trial court's August 29, 2016, decision was not a "decision in the case" for purposes of Pennsylvania Rule of Civil Procedure No. 227.1(c) because it did not dispose of all claims for relief. It was not a permanent injunction. The Supreme Court was not, "at this juncture, prepared to say" that a court may never convert a preliminary

---

[8] Pennsylvania Rule of Appellate Procedure 311(a)(4) provides:

> (a) General rule.—An appeal may be taken as of right and without reference to Pa. R.A.P. 341(c) [regarding final orders] from:
>
> ***
>
> (4)  Injunctions.—An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:
>
> > (i)    Pursuant to 23 Pa. C.S. §§3323(f) [regarding injunction issued in matrimonial causes], 3505(a) [regarding injunction issued to prevent disposition of property to defeat obligations]; or
> >
> > (ii)   After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

PA. R.A.P. 311(a)(4).

injunction hearing into a permanent injunction hearing without the consent of the parties. *Wolk*, 197 A.3d at 741-42. The Supreme Court concluded, however, that such a scenario "should be infrequent." *Id.* at 742.

The Supreme Court remanded the School District's appeal to this Court for consideration of the merits of the School District's appeal of the preliminary injunction.[9]

By order of March 8, 2019, this Court directed the parties to file amended briefs or to notify this Court of their intent to rely upon their previous briefs. All parties submitted amended briefs. The Pennsylvania State Education Association (PSEA), Pennsylvania Association of School Administrators (PASA), and the Pennsylvania Association of School Business Officials (PASBO) have jointly filed an amended *amicus curiae* brief in support of the School District. The Pennsylvania School Boards Association also filed an amended brief of *amicus curiae* in support of the School District.

The School District raises three issues, which we have reordered for purposes of our review. First, the School District argues that the trial court usurped the authority of the Department to approve, or disapprove, an exception from the

---

[9] On appeal from an order granting a preliminary injunction, our scope of review is "limited to whether there were reasonable grounds for the action of the court below, and we will not consider the merits of the case or pass upon reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable." *Fox-Morris Associates, Inc. v. Conroy*, 333 A.2d 732, 733-34 (Pa. 1975). Where, as here, the preliminary injunction appealed is mandatory in nature, which commands the performance of some positive act to preserve the status quo, "we have insisted that a clear right to relief in the plaintiff be established." *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981). *See also Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1241 (Pa. Super. 2011) (explaining that preventative injunctions preserve the status quo by forbidding an act or acts, while mandatory injunctions command the performance of some specific act that will maintain the relationship between the parties).

voter referendum required for a tax increase in excess of the statutory index. Second, the School District contends that the trial court lacked authority to issue a preliminary injunction because preliminary objections raising questions of, *inter alia*, jurisdiction had been filed and were awaiting a decision. Third, the School District argues that Taxpayers did not meet the prerequisites for the issuance of a preliminary injunction and, thus, the trial court's injunction must be vacated.

PSEA, PASA, and PASBO's amended brief of *amici curiae* echoes the School District's argument on justiciability. These associations emphasize that the decisions of the elected board of school directors leave "no room for judicial intervention." PSEA Amended *Amicus Curiae* Brief at 6. The Pennsylvania School Boards Association's amended *amicus curiae* brief echoes the School District's argument that the trial court usurped the authority of the Department to review a school district's request for a referendum exception.

## I. Taxpayers' Motion to Strike Amended Briefs

Taxpayers have moved to strike the amended briefs of the School District and of the *amici curiae*.[10] Taxpayers point out that the School District makes legal arguments involving the General Municipal Law[11] and Section 1922 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922. Motion to Strike at 3-5, ¶7. These were not raised to the trial court. They further challenge the School District's citation to "matters on the internet," such as election results, the Department's reports on referendum exceptions, and data of employer contributions to the Public School Employees' Retirement System (PSERS). Motion to Strike at 3-4, ¶7 (citing

---

[10] *See* Order of May 9, 2019 (wherein this Court ordered disposition of the application to strike at the same time as the merits of the appeal). Taxpayers also filed a "Motion for Sanctions, Referral to the Pennsylvania Attorney General, and Referral to the Attorney Disciplinary Committee." By order of July 22, 2019, this Court denied Taxpayers' motion.

[11] Act of June 25, 1895, P.L. 275, *as amended*, 53 P.S. §§101-11703.8.

School District Amended Brief at 13-33). The record before the trial court lacks any mention of those matters.

Likewise, Taxpayers challenge the amended *amicus curiae* briefs for asserting facts outside the certified record. This includes information about the elected School Board members and the number of votes they received. *See* PSEA Amended *Amici Curiae* Brief at 15-18 and Appendix A.

The School District responds that it may cite new legal authorities that were not cited below. It also argues that the "matters on the internet" it cited were derived from "sources of unquestionable validity" and contain relevant information. School District Memorandum of Law at 5. It argues that this Court "can and does rely on both legislative facts and adjudicative facts." *Id*. at 4. Likewise, it believes the amended *amici curiae* briefs are proper because they "bring additional insight to the questions before the Court." *Id*. at 6 (citing PA. R.A.P. 531, Note).

The statutes cited by the School District all relate to its legal objection to Taxpayers' request for a preliminary injunction, *i.e.,* that Taxpayers did not meet the prerequisites for a preliminary injunction. That legal issue was raised and preserved for review. Accordingly, there is no bar to the School District making additional legal arguments on those preserved issues. *Wert v. Department of Transportation*, *Bureau of Driver Licensing,* 821 A.2d 182, 186 n.10 (Pa. Cmwlth. 2003) (noting that Pennsylvania Rule of Appellate Procedure 302(a)[12] requires that "issues" be preserved, not "reasoning").

---

[12] Rule 302(a) states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." PA. R.A.P. 302(a). In *Wert*, we explained:

> We do not believe that Pa. R.A.P. 302(a) requires a litigant to make identical arguments at each stage of his case. The issue must be preserved, but this does not mean every argument is written in stone at the initial stage of litigation. Thus, logic

11

The Statement of Facts in the School District's amended brief refers only briefly to the hearing record. School District's Amended Brief at 23 and 26. Instead, the School District's Statement of Facts presents an extensive compilation of news websites, the School District's online portal, state and local governmental reports and data publications. The School District presented no witnesses at the preliminary injunction hearing.

Rule of Appellate Procedure 2117(a)(4) provides that the statement of the case must contain a narrative statement of "all the facts which are necessary to be known in order to determine the points in controversy, *with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found*." PA. R.A.P. 2117(a)(4) (emphasis added). Only those facts that have been duly certified in the record on appeal may be considered. *Kochan v. Department of Transportation, Bureau of Driver Licensing*, 768 A.2d 1186, 1189 (Pa. Cmwlth. 2001). The School District offers no explanation for not presenting these documents or relevant witness testimony at the preliminary injunction hearing.

We deny Taxpayers' motion to strike new legal authorities from the School District's amended brief but grant the motion to strike the Statement of Facts in the amended brief to the extent it asserts facts outside the trial court's certified record. We also strike the arguments based upon those stricken factual statements. We deny Taxpayers' motion to strike the citations to new legal authorities from the amended *amici curiae* briefs but grant the motion to strike parts of the amended

_____

dictates that an appellant can raise new arguments so long as they relate to the same issue.

*Wert*, 821 A.2d at 186 n.9 (internal citations omitted).

12

*amici curiae* briefs asserting facts outside the certified record and the arguments made thereupon.

## II. Preliminary Injunction Challenge
## A. Trial Court's Jurisdiction and Exhaustion of Remedies

The School District argues that the trial court usurped the authority of the Department to approve, or disapprove, a request for an exception from the requirement of a voter referendum on school tax increases in excess of the statutory index. The School District contends that Taxpayers should have filed a complaint with the Department and then appealed to this Court if they received an adverse decision. Taxpayers counter that the Taxpayer Relief Act does not authorize such a remedy, and, further, the trial court has the power to fashion an equitable remedy as "necessary to protect taxpayers from the actions of the school districts." Taxpayers' Brief at 6. Those actions, according to Taxpayers, consisted of the School District's misrepresentation of its finances in order to avoid having to submit the desired tax increase to a voter referendum.

"It is a cornerstone principle in equity that when the legislature provides a statutory remedy, equity has no place." *Borough of Trappe v. Longaker*, 547 A.2d 1311, 1313 (Pa. Cmwlth. 1988). It is also well established that "an administrative agency has exclusive jurisdiction where the legislature has given it the power to adjudicate on a particular subject matter." *Sunrise Energy, LLC v. FirstEnergy Corp.,* 148 A.3d 894, 903 (Pa. Cmwlth. 2016). Stated otherwise, a statutory remedy must be strictly pursued and this remedy "is exclusive unless the jurisdiction of the courts is preserved thereby." *Lashe v. Northern York County School District*, 417 A.2d 260, 264 (Pa. Cmwlth. 1980). As this Court further explained in *Lashe*:

> Jurisdiction is the power of a court to enter into an inquiry on a certain matter. A careful distinction must be made between

13

> subject matter jurisdiction, which we have just defined, and equity jurisdiction, which describes the remedies available in equity.

*Id*. at 263 (internal citations omitted). An adequate remedy at law means that "equity may withhold its remedies." *Id*. at 262. Further, where the "[l]egislature provides a statutory remedy which is mandatory and exclusive, equity is without power to act." *DeLuca v. Buckeye Coal Co.*, 345 A.2d 637, 640 (Pa. 1975).

Where an administrative agency lacks the competency to rule on a question, such as the constitutionality of a statute it is charged to enforce, the statutory remedy does not bar equitable relief. Accordingly, a challenge to the constitutionality of a taxing statute may be initiated in equity, notwithstanding the statutory remedy for challenging a tax assessment. *Sunrise Energy*, 148 A.3d at 902. In such a scenario, there is less need for "the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise." *Borough of Green Tree v. Board of Property Assessment, Appeals and Review in Allegheny County*, 328 A.2d 819, 825 (Pa. Cmwlth. 2004).

With these principles in mind, we turn to the School District's jurisdictional arguments.

Section 333(b)(l) of the Taxpayer Relief Act prohibits a school district from "[i]ncreas[ing] the rate of a tax levied for the support of the public schools by more than the index." 53 P.S. §6926.333(b)(1). The Department calculates and publishes the index on an annual basis. 53 P.S. §6926.333(*l*). The parties do not dispute that for the fiscal year 2016-2017, the School District's index was set at 2.4%.

A school district may raise taxes above the index by putting the increase to "the electors of the school district" in a referendum "stating the specific rate or

14

rates of the tax increase," which "a majority of the electors voting on the question must approve." Section 333(c)(1) of the Taxpayer Relief Act, 53 P.S. §6926.333(c)(1). Alternatively, a school district may request an exception from the referendum requirement "due to an expenditure under subsection (f)(2)(iii) or (v) or (n) [relating to pension obligations, special education expenses, grandfathered debt, and electoral debt]." Section 333(j)(1) of the Taxpayer Relief Act, 53 P.S. §6926.333(j)(1). To obtain this exception, a school district must demonstrate to the Department that "[t]he revenue raised by the allowable increase under the index is insufficient to balance the proposed budget due to one or more of the expenditures listed in [Section 333(f)(2)]." Section 333(f)(1) of the Taxpayer Relief Act, 53 P.S. §6926.333(f)(1).

A school board that seeks to increase taxes above the statutory index must adopt a preliminary budget proposal for estimated revenues, expenditures, and proposed tax rates, and make the budget proposal available for public inspection. 53 P.S. §6926.331(b)-(c), 6926.333(j)(2). The school district must also submit this information to the Department. 53 P.S. §6926.333(e).

Section 333(j)(3)-(4) of the Taxpayer Relief Act provides the following standards for the Department's review of a request for an exception:

> (3) The department shall approve a school district's request under this subsection if a review of the data under paragraph (4) demonstrates that:
>
> > (i) the school district qualifies for one or more exceptions under subsection (f)(2)(iii) or (v) or (n); and
> >
> > (ii) the sum of the dollar amounts of the exceptions for which the school district qualifies makes the school district eligible under subsection (f)(1).

15

(4) For purpose of determining the eligibility of a school district for an exception under subsection (f)(2)(v), the department shall utilize data from the most recent school years for which annual financial report data required under section 2553 of the Public School Code of 1949 has been received. The department shall inform school districts of the school years determined under this subsection no later than 30 days prior to the date on which public inspection of proposed school budget is required under section 311(c).

53 P.S. §6926.333(j)(3)-(4). The Department "shall establish procedures for administering the provisions of this subsection, which may include an administrative hearing on the school district's submission." 53 P.S. §6926.333(j)(1). If the Department schedules a hearing on the school district's request, the school district shall publish notice of the hearing "immediately upon receiving the information from the [D]epartment." 53 P.S. §6926.333(j)(2).

When the Department approves a school district's request for a referendum exception, with or without a hearing, the Department determines "the dollar amount of the expenditure for which the exception is sought and the tax rate increase required to fund the exception." Section 333(j)(5)(ii) of the Taxpayer Relief Act, 53 P.S. §6926.333(j)(5)(ii). If the Department denies a school district's request for an exception, there is no administrative appeal. The school district's sole remedy is to put its proposed tax increase to a vote of the electors. 53 P.S. §6926.333(j)(5)(iii).[13] The Taxpayer Relief Act does not establish a mechanism by which a school district can challenge the Department's denial of its exception. Nor

---

[13] It states:

> If the department denies the request, the school district may submit a referendum question under subsection (c)(1). The question must be submitted to the election officials no later than 50 days prior to the date of the election immediately preceding the beginning of the school district's fiscal year.

53 P.S. §6926.333(j)(5)(iii).

16

does it provide a remedy to a taxpayer that wishes to challenge the Department's approval of an exception.

Here, the Department approved the exception for the 2016-2017 tax increase based on the School District's general fund budget showing it needed $4,050,926 in excess of the tax revenue produced by the statutory index. The trial court found that the School District overstated expenses and understated revenue in order to obtain the exception and avoid a voter referendum. The trial court also found that the School District did not disclose its actual prior year surpluses to the Department in seeking the exception.

Neither the Taxpayer Relief Act nor the School Code provide a remedy to challenge a school tax increase. The Administrative Agency Law[14] and Local Agency Law[15] are likewise unavailing. Where an agency's action "only affects the interest of the public in general, then the action will not be deemed an adjudication." *Ondek v. Allegheny County Council*, 860 A.2d 644, 648 (Pa. Cmwlth. 2004)[16] (holding that a resolution issued by county council was a legislative enactment from which taxpayers have no right to appeal).[17] A tax set by a school district is not an

---

[14] 2 Pa. C.S. §§501-508, 701-704.

[15] 2 Pa. C.S. §§551-555, 751-754.

[16] Quoting *LaFarge Corp. v. Insurance Department*, 690 A.2d 826, 833 (Pa. Cmwlth. 1997), *rev'd on other grounds*, 735 A.2d 74 (Pa. 1999).

[17] For purposes of the Administrative Agency Law and the Local Agency Law, an "adjudication" is defined as follows:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. C.S. §101. Section 702 of the Administrative Agency Law provides that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such

17

"adjudication" because it does not impact discrete parties but the public at large. This is also the case for the Department's approval of an exception. Only an "adjudication" is reviewable under the Administrative Agency Law. 2 Pa. C.S. §702.

Similarly, the Taxpayer Relief Act does not create a mechanism for challenging the Department's approval or disapproval of a school district's application. The school district whose exception is denied has only one recourse: submit the proposed tax increase to the voters. Section 333(c) of the Taxpayer Relief Act, 53 P.S. §6926.333(c). The Taxpayer Relief Act is silent on a challenge to the Department's approval of an exception to the voter referendum. The Department's stated public position is that it will not conduct an administrative hearing on its approval of an exception.[18]

Nevertheless, the School District argues that Taxpayers have remedies under the General Rules of Administrative Practice and Procedure (GRAPP). GRAPP permits that "[a] person objecting to the approval of an application, petition, motion or other matter which is, or will be, under consideration by an agency may

---

adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa. C.S. §702. Section 752 of the Local Agency Law likewise provides:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. C.S. §752. To the extent Taxpayers challenge the School Board's decision to raise taxes by 4.44%, that action does not constitute an adjudication under the Local Agency Law. *Ondek*, 860 A.2d at 648.

[18] Taxpayers have requested that this Court take judicial notice of the Department's position, which it set forth in a letter of November 22, 2017, stating that there is no hearing on the Department's decision on a request for an exception to a voter referendum. The statute, not the Department's stated position, is dispositive.

18

file a protest." 1 Pa. Code §35.23. GRAPP also provides that "[a] person complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency." 1 Pa. Code §35.9. GRAPP is not a statutory remedy, and it is irrelevant to the School District's jurisdictional arguments.

GRAPP "governs the practice and procedure before agencies of the Commonwealth except as otherwise provided[.]" 1 Pa. Code §31.1(a). A "protest" filed under GRAPP does not require an agency to hold a hearing or to develop a factual record. Indeed, the "filing of a protest does not make the protestant a party to the proceeding," which "is intended solely to alert the agency and the parties to a proceeding of the fact and nature of the objection of the protestant to the proposed agency action." 1 Pa. Code §35.24. A protest has no effect beyond that achieved by a letter to an agency.

More importantly, GRAPP does not create substantive rights. It governs the procedures for conducting hearings that are created by statute. Neither the Taxpayer Relief Act nor the Administrative Agency Law create a hearing for challenging the School District's

> legerdemain in yearly projecting multimillion-dollar deficits in documents required by law to be published to the voters and/or filed with the Commonwealth and not disclosing that contrary to projections the District every year experienced multimillion dollar surpluses[.]

Trial Court op. at 14. GRAPP cannot be used to create substantive rights where none exist under the applicable statutes.

19

The Taxpayer Relief Act, the Public School Code and the Administrative Agency Law do not create a remedy for the taxpayer who asserts a school district has engaged in legerdemain to avoid putting a school tax increase to the voters in a referendum. Even if there were such a remedy, it must be "adequate and complete" to avoid equitable relief. *Borough of Greentree*, 328 A.2d at 825.

Simply, there is no statute that speaks to the harm alleged by Taxpayers, *i.e.*, the School District's projection of deficits and disguise of prior year surpluses to avoid giving residents the opportunity to vote on a school tax increase. We reject the School District's contention that Taxpayers should have made their case to the Department and that the trial court erred in exercising equitable jurisdiction to fashion an interim remedy, pending the outcome of a full review of Taxpayers' underlying complaint.

## B. Pending Preliminary Objections

The School District argues, next, that the trial court erred by holding a preliminary injunction hearing when preliminary objections to the amended complaint were pending. Taxpayers counter that the trial court did not err and that, implicitly, the trial court believed it had jurisdiction.

This issue is not listed in the School District's statement of the questions presented for appeal. This is required by Rule 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). PA. R.A.P. 2116(a). "This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." *Wirth v. Commonwealth*, 95 A.3d 822, 858 (Pa. 2014). The School District's issue has been waived.

20

Even if the issue were not waived, the School District's argument lacks merit. The law does not bar the issuance of a preliminary injunction merely because preliminary objections are pending. In *Aitkenhead v. Borough of West View*, 397 A.2d 878 (Pa. Cmwlth. 1979), for example, the trial court granted the plaintiff a preliminary injunction while the defendant's preliminary objections raising a question of jurisdiction were pending. This Court opined that the action of the court in granting the injunction is a decision in favor of jurisdiction, but only insofar as the preliminary injunction is issued to maintain the *status quo*. *Id*. at 880. In other words, "the preliminary objections have been considered by the [trial court] only for the purpose of determining whether or not a preliminary injunction should issue." *Id.*

A preliminary injunction is not conclusive. It is a "temporary remedy granted until that time when the parties' dispute can be completely resolved." *Chipman ex rel. Chipman v. Avon Grove School District*, 841 A.2d 1098, 1101 (Pa. Cmwlth. 2004). We conclude that the trial court's issuance of a preliminary injunction was not barred by the mere filing of preliminary objections by the School District.

## C. Elements of Preliminary Injunction

Finally, the School District argues that Taxpayers did not establish the prerequisites for the issuance of a preliminary injunction, and thus, the trial court's decision must be vacated. Taxpayers counter that the trial court issued a permanent injunction, which was narrowly drawn and consistent with "the long line of tax cases that have uniformly held an injunction is the proper remedy for an abusive, illegal

21

tax scheme." Taxpayers Brief at 22. Taxpayers further argue that they have established all the prerequisites for a preliminary injunction.[19]

Appellate review of a preliminary injunction is "highly deferential" and is limited to determining whether the trial court abused its discretion. *Summit Town Centre, Inc. v. Shoe Show of Rocky Mount, Inc*., 828 A.2d 995, 1000 (Pa. 2003). Our Supreme Court has expounded on this deferential standard of review as follows:

> [W]e recognize that on appeal from the grant or denial of a preliminary injunction, *we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below.* Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

*Id*. (citations omitted) (emphasis added). "If the record supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28, 41 (Pa. Cmwlth. 2009). In addition, "the facts are to be viewed in a light most favorable to the winner at the trial court level." *Id*.

There are six essential prerequisites to a preliminary injunction. The moving party must establish (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury will result from refusing an injunction than from granting it and, concomitantly, that issuance of an injunction will not substantially harm other interested parties; (3) a preliminary injunction will properly restore the parties to

---

[19] We reject Taxpayers' contention that the trial court has granted a permanent injunction. The Supreme Court's holding that the trial court issued a preliminary injunction is binding on this Court. *Wolk*, 197 A.3d at 741-42.

their status as it existed immediately prior to the alleged wrongful conduct; (4) a clear right to relief; (5) the injunction is reasonably suited to abate the alleged harm; and (6) issuance of an injunction will not adversely affect the public interest. *Summit Town Centre*, 828 A.2d at 1001.

For purposes of injunctive relief, statutory violations constitute irreparable harm *per se*. *Pennsylvania Public Utility Commission v. Israel*, 52 A.2d 317 (Pa. 1947). In *Israel*, the Public Utility Commission filed suit seeking to enjoin a transportation company from operating gypsy taxicabs because the company did not possess a certificate of public convenience as required by Section 903 of the Public Utility Law, then in effect.[20] The company admitted a violation of the statute but asserted that its unlicensed taxicab service did not create a harm; to the contrary, it provided a valued service because there was a shortage of taxicabs in Philadelphia. In rejecting the company's argument, the Supreme Court stated:

> At the hearing the Commonwealth has made a prima facie showing that the defendants are operating taxicabs in violation of law. The argument that a violation of law can be a benefit to the public is without merit. *When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury….*
>
> The argument that there is no "irreparable damage," would not be so often used by wrongdoers, if they would take the trouble to observe that the word "irreparable" is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages which are estimable only by conjecture and not by any accurate standard. Besides this, where the right

---

[20] *Formerly* Section 903 of the Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1343. A substantially similar provision is now codified at Section 502 of the Public Utility Code, 66 Pa. C.S. §502.

23

> invaded is secured by statute ... there is generally no question of the amount of damage, but simply of the right.

*Israel*, 52 A.2d at 321 (internal quotations omitted) (emphasis added). The Supreme Court affirmed the issuance of a preliminary injunction. *See also Milk Marketing Board v. United Dairy Farmers Co-op Association*, 299 A.2d 191 (Pa. 1973); *Snyder*, 977 A.2d 28.

The trial court found that the School District misrepresented its revenues and expenditures to the Department in order to increase taxes without putting it to a voter referendum, which conduct violated the Taxpayer Relief Act. Trial Court op. at 14-15. Further, the School District had accumulated surplus in excess of the 8% permitted by Section 688(a) of the School Code, 24 P.S. §6-688(a). Statutory violations constitute irreparable harm *per se*, which relieved the trial court of undertaking the balance of the harm inquiry. *Israel*, 52 A.2d at 321. In any case, the School District's accumulated surplus of approximately $42.5 million from fiscal year 2009-2010 through 2015-2016 far exceeds the amount of the tax increase halted by the preliminary injunction, *i.e.,* $4,051,213.

A preliminary injunction is appropriate where it restores the parties to the *status quo* that existed prior to the alleged wrongful conduct. *Israel*, 52 A.2d at 321. The trial court's preliminary injunction restores the parties to where they were before the School District's 4.44% tax increase. *Ambrogi v. Reber*, 932 A.2d 969, 979 (Pa. Super. 2007) (noting that an injunction addresses the *status quo* as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction).

For a right to be clear, it must be "more than merely viable or plausible;" however, this requirement is not the equivalent of stating that no factual disputes exist between the parties. *Ambrogi*, 932 A.2d at 980. The party seeking a

24

preliminary injunction "need not prove the merits of the underlying claim, but need only show that substantial legal questions must be resolved to determine the rights of the parties." *Snyder*, 977 A.2d at 43.

Here, the trial court found that the School District's "legerdemain" in repeatedly projecting multimillion-dollar deficits in order to obtain the Department's approval of its exception, while each year experiencing multimillion-dollar surpluses that it moved into other accounts, violated the Taxpayer Relief Act and the Public School Code. The School District argues that a trial court may not act as a "super school board" to interfere with a school district's discretion. School District Brief at 51. However, a "preliminary injunction interfering with that discretion is appropriate where a school board" acts in violation of law. *Save Our School v. Colonial School District*, 628 A.2d 1210, 1211-12 (Pa. Cmwlth. 1993).

We do not determine the merits of the underlying controversy. The proper question is whether Taxpayers produced sufficient evidence to show that "substantial legal questions must be resolved to determine the rights of the parties." *Snyder*, 977 A.2d at 43. Given our highly deferential review, we conclude that the injunction is reasonably suited to abate the alleged harm because the School District was allowed to implement the 2.4% tax increase for fiscal year 2016-2017, notwithstanding Taxpayers' assertion that the statutory index was based on prior tax increases that were also unlawfully based on accounting practices that amounted to legerdemain.

For all these reasons, we conclude that the trial court had reasonable grounds upon which to enjoin the School District from implementing a 4.44% tax increase for fiscal year 2016-2017 and to limit the tax increase to 2.4%.

## Conclusion

We deny Taxpayers' motion to strike new legal authorities from the School District's amended brief and the amended *amici curiae* briefs, but grant the motion to strike the School District's amended brief and the amended *amici curiae* briefs to the extent they assert facts outside the trial court's certified record, as well as the arguments made from the stricken material.

We further conclude that the trial court had jurisdiction to issue the preliminary injunction because neither the School Code nor the Local Agency Law provide a statutory remedy to correct the alleged misconduct of the School District. Likewise, the Taxpayer Relief Act provides no statutory appeal from the Department's approval of a referendum exception. We reject the claim of the School District that the doctrine of exhaustion of administrative remedies barred the trial court's preliminary injunction.

For these reasons, we affirm the trial court's order of August 29, 2016, and remand this matter to the trial court for further proceedings on the underlying complaint.[21]

_____
MARY HANNAH LEAVITT, President Judge

---

[21] The docket includes a number of motions for judicial notice filed by Taxpayers, including "Appellees' motion to take judicial notice of Pennsylvania Department of Education letter dated May 6, 2019 and official statements of Pennsylvania Department of Education Division of Subsidy Data and Administration Chief given to NBC news" (filed 5/14/2019); "Appellees' motion to take judicial notice of Pennsylvania Department of the Auditor General report of the Lower Merion School District dated October 23, 2017" (filed 5/28/2019); and "Appellees' motion to take judicial notice of Pennsylvania Department of Education letter dated November 22, 2017" (filed 6/21/2019). All of the motions for judicial notice shall be dismissed because they are immaterial.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur Alan Wolk, Philip Browndies,   :
and Catherine Marchand   :
  :
      v.   :   No. 1465 C.D. 2016
  :
The School District of Lower Merion,   :
        Appellant   :

## **O R D E R**

AND NOW, this 2nd day of March, 2020, the order of Montgomery County Court of Common Pleas, dated August 29, 2016, is hereby AFFIRMED. This matter is REMANDED to the Court for further proceedings on the underlying complaint.

Consistent with the foregoing opinion, Appellees' motion to strike Appellant's amended brief and the amended *amici curiae* briefs is DENIED in part and GRANTED in part. Appellees' motions for judicial notice are DISMISSED.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge